In re James E. and Karin
B. COMBS, Debtors.

Neil C. GORDON, Chapter
7 Trustee, Plaintiff,

v.

WESTSIDE BANK & TRUST COM-
PANY, American Mobile Of-
fices, Inc., Defendants.

Bankruptcy No. A94–68993–ADK.
Adv. No. 95–6166.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 18, 1995.

Macey, Wilensky, Cohen, Wittner & Kes-
sler, Atlanta, GA, for plaintiff.

David P. Darden, Smith, Eubanks, Smith
& Darden, P.C., for Westside Bank & Trust
Co.

Stan C. Johnson, Atlanta, GA, for Ameri-
can Mobile Offices, Inc.

## ORDER

ARMAND DAVID KAHN, Bankruptcy
Judge.

Plaintiff, the Chapter 7 Trustee for the
estate of James E. and Karin B. Combs
("Plaintiff–Trustee") filed the above-styled
adversary proceeding (the "Complaint") to
recover certain allegedly preferential and
fraudulent transfers pursuant to 11 U.S.C.
§§ 547, 548, and 550. It is before the Court
on cross-motions for summary judgment filed
by Defendant Westside Bank & Trust Com-
pany ("Westside") and Plaintiff–Trustee.
Defendant American Mobile Offices, Inc.
("AMO") has failed to file a response to
either cross-motion. Therefore, the cross-
motions are deemed to be unopposed by
AMO. See LR 220–1(b), NDGa., made appli-
cable to this proceeding by BLR 705–2,
NDGa. The Court finds this matter to be a
core proceeding within the meaning of 28
U.S.C. § 157(b)(2).

## I.

The following facts are undisputed. On or
about April 8, 1993, AMO, the wholly owned
corporation of James E. and Karin B. Combs
(the "Debtors"), executed a promissory note
(the "Note") in favor of Westside in the
principal amount of $20,000.00. See Exhibit
"A" attached to the Complaint. It was pay-
able in full on April 8, 1994. The Note was
secured by, *inter alia*, AMO's accounts re-
ceivable, and it was guaranteed by the Debt-
ors.

Sometime on or before March 31, 1994, the Debtors liquidated their retirement account at Westside by withdrawing the sum of $30,-871.08. This sum was deposited in the Debtors' personal bank account at the Etowah Bank. On April 7, 1994, the Debtors wrote a check on this account in the amount of $23,-000.00 payable to AMO. The next day, April 8, the check to AMO was deposited in AMO's bank account at Westside. On the same day, April 8, AMO paid Westside $20,137.78 by check number 1234, signed by Debtor Karin B. Combs in satisfaction of the Note.

The Parties appear to dispute the amount of funds available in AMO's Westside bank account during the time surrounding the transaction in question. For the purposes of the cross-motions for summary judgment, the Court will adopt Plaintiff–Trustee's version of the "facts" and assume that there was little in AMO's account before or after the transaction and that the only way AMO could have paid its debt to Westside was by the $23,0000.00 deposit made by the Debtors into its account on April 8, 1994.

## II.

### A. RECOVERY AGAINST WESTSIDE

■ Plaintiff–Trustee seeks to recover, pursuant to § 550(a)(1), the transfer of the sum of $20,137.78 from Westside as a preferential transfer of property of the Debtors. It is undisputed that, if the transfer had been made directly from the Debtors to Westside, the transfer would have been preferential.[1] Plaintiff–Trustee maintains that he may recover the transfer from Westside pursuant to § 550(a)(1), which provides that

[e]xcept as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the

court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.

Although Westside was not the actual initial transferee of the funds from the Debtors, Plaintiff–Trustee argues that AMO acted as a mere conduit and should be overlooked. In support of his conduit theory, Plaintiff–Trustee relies upon the case of *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196 (11th Cir.1988) *("Chase & Sanborn II")*. In *Chase & Sanborn II*, the trustee was attempting to recover a fraudulent conveyance. The Eleventh Circuit Court of Appeals affirmed the lowers courts' refusal to find that the defendant, Societe Generale—a French bank, was an initial transferee within the meaning of § 550(a)(1), where it had received a wire transfer of funds from the debtor.

The court found that Societe Generale was a mere commercial conduit. In reaching this result, the Court of Appeals used a control test previously adopted in *In re Chase & Sanborn*, 813 F.2d 1177 (11th Cir.1987) *("Chase & Sanborn I")* to determine whether Societe Generale had actual control over the funds. "The control test, then, as adopted by this circuit, simply requires courts to step back and evaluate a transaction in its entirety to make sure that their conclusions are logical and equitable." *Chase & Sanborn II*, 848 F.2d at 1199.

Applying this control test to the proceeding *sub judice*, it is undisputed that the funds were deposited into AMO's own bank account. After the deposit, AMO could have used the funds in any manner it chose, including paying its debt to Westside. Plaintiff–Trustee, in essence, is requesting that this Court ignore the fact that AMO was a separate entity from the Debtors. However, he has not alleged any facts that would allow

---

1. The transfer would then appear to satisfy all the elements of a preference:

   a transfer of an interest of the debtor in property—(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made—(A) on or within 90 days before the date

   of the filing of the petition ...; and (5) that enables such creditor to receive more than such creditor would receive if—(A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title. Section 547(b).

the Court to ignore the corporate form of AMO.

In support of its position that AMO was not a mere conduit, Westside relies heavily on the case of *Billings v. Key Bank of Utah* (*In re Granada, Inc.*), 156 B.R. 303 (D.Utah 1990). In *Granada*, the trustee was attempting to recover as preferential transfers made by the debtor general partner through its partnerships. The district court affirmed the bankruptcy court's finding that the partnerships were initial transferees within the meaning of § 550(a)(1) and not mere conduits as the trustee had asserted. Just as the Debtors in the proceeding *sub judice* controlled AMO, the debtor in *Granada* controlled the partnerships. In response to this fact pattern, the *Granada* court stated as follows:

> The bankruptcy court was concerned with the fact that Granada not only controlled the funds transferred to the partnerships but also controlled the disposition of the partnerships' funds. This fact, however, does not mean that the partnerships had no control over the money. The partnerships properly exercised control over the funds through Granada, their general partner. Granada's control over the funds was also the partnerships' control over the funds. The trustee has offered no persuasive reason why Granada should be treated as an entity foreign to the partnerships. To follow the trustee's reasoning would mean that partnerships would almost always be conduits of their general partners since general partners always control their partnerships. Such a rule would, in this court's opinion, go far beyond what the conduit theory was designed to accomplish.

*Granada*, 156 B.R. at 308.

Although the holding in *Granada* is obviously not binding on this Court, the Court does find its reasoning persuasive. If the Court were to adopt Plaintiff–Trustee's reasoning and find that AMO was a conduit, then most closely held corporations could be said to be mere conduits in similar situations where they receive a transfer from a sole or majority shareholder. The Court is unwilling to so readily disregard the corporate form, especially as in this instance where Plaintiff–Trustee has failed to allege, let alone establish, any facts which would persuade the Court to do so. Therefore, the Court will grant summary judgment in favor of Westside [2].

## B.  RECOVERY AGAINST AMO

In the alternative to recovery from Westside, Plaintiff–Trustee seeks recovery of the $23,000.00 transfer from AMO as a fraudulent transfer. Plaintiff–Trustee also seeks to recover two other transfers in the amounts of $1,450.00 and $7,000.00 from the Debtors to AMO. In addition to the undisputed facts which appear in Part I of this Memorandum, the following facts appear in Plaintiff–Trustee's Statement of Material Facts to Which There is no Dispute and are uncontroverted by AMO:

### 12.

Debtors earned no income from AMO from 1993 through the June 30, 1994 filing date.

### 13.

Debtors valued AMO at $0 as of the filing date.

· · · · ·

### 17.

On March 14, 1994, Debtors wrote check number 5459 in the amount of $1,450.00 from their personal bank account at First

---

2. The Court is granting summary judgment in favor of Westside on the basis that it was not the initial transferee. Section 550(a)(2) allows recovery from an immediate or mediate transferee of the initial transferee. However, recovery under § 550(a)(2) is limited by § 550(b), which provides that

> [t]he trustee may not recover under section (a)(2) of this section from
> (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> (2) any immediate or mediate good faith transferee of such transferee.

It appears to the Court that Plaintiff–Trustee is not contending that he is able to recover from Westside under § 550(a)(2). If this assumption is incorrect, Plaintiff–Trustee may file an appropriate motion to bring the issue of recovery under § 550(a)(2) before the Court.

Union National Bank, account number 1039002217023, to AMO.

18.

On March 14, 1994, AMO deposited the $1,450.00 check into its account at Westside, account number 3–010475–6.

19.

On June 19, 1994, Debtors wrote check number 164 in the amount of $7,000.00 from their personal account at the Etowah Bank, account number 9000025842, to AMO, Debtors' wholly owned corporation.

20.

On June 23, 1994, AMO deposited the $7,000.00 check into its account at Westside, account number 3–010475–6.

21.

The Debtors were presumed to be insolvent at the time that each of these transfers were made in accordance with 11 U.S.C. § 547(f).

22.

As of June 30, 1993, Debtors had assets n the amount of $172,633.73 and liabilities in the amount of $268,056.27.

Plaintiff–Trustee's Statement of Material Facts to Which There is no Dispute at 3—5 (citations omitted).

 Plaintiff–Trustee seeks to set these three transfers aside as fraudulent transfers pursuant to § 548(a)(2) of the Bankruptcy Code, which provides:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

.    .    .    .    .

(2)(A) received less that a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.

It is undisputed that all three transfers in question occurred within one year of the Debtors' filing their bankruptcy petition. Furthermore, by not responding to Plaintiff–Trustee's Motion for Summary Judgment, AMO has failed to dispute that the Debtors received nothing of value in exchange for the transfers and that the Debtors were insolvent at the time of the transfers [3]. Therefore, the Court finds that Plaintiff–Trustee is entitled to judgment against AMO for the total of the three transfers, or $31,450.00. He is also entitled to prejudgment interest from August 24, 1994, the date of demand.

Therefore, in accordance with the reasoning above, **IT IS THE ORDER OF THE COURT** that the Motion for Summary Judgment filed by Defendant Westside Bank & Trust Company be, and the same hereby is, **GRANTED.**

**IT IS THE FURTHER ORDER OF THE COURT** that the Motion for Summary Judgment filed by Plaintiff–Trustee be, and the same hereby is, **DENIED** as to Defendant Westside Bank & Trust and **GRANTED** as to Defendant American Mobile Offices, Inc.

An appropriate Judgment is entered contemporaneously herewith.

**IT IS SO ORDERED.**

---

**3.** Plaintiff–Trustee argues in his brief that the presumption of insolvency contained in § 547(f) dealing with preferences can be used in the context of § 548 fraudulent transfer litigation. The Court does not accept this theory. Clearly, Congress intended the presumption of insolvency to be available in preference litigation only. It deliberately did not include such a presumption for fraudulent transfer litigation. However, because AMO has failed to controvert Plaintiff–Trustee's assertion that the Debtors were insolvent at the time of the transfers, it is unnecessary for the Court to rule against Plaintiff–Trustee on this point.